CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUN 26 2018
JULIA C. DUDLEY, CLERK
BY: H McOmega
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOHN ANGELO SMITH, | ) | CASE NO. 7:17CV00072 |
| Petitioner, | ) | |
| v. | ) | MEMORANDUM OPINION |
| WARDEN, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

John Angelo Smith, a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment in the Lynchburg City Circuit Court for possession of cocaine with the intent to distribute as a third or subsequent offense. Respondent filed a motion to dismiss, and Smith responded, making the matter ripe for disposition. After review of the record, I grant the motion to dismiss and dismiss the petition.

## I.     Procedural History

Smith pleaded guilty to possession of cocaine with the intent to distribute as a third or subsequent offense, and on September 9, 2011, the trial court entered final judgment, sentencing him to ten years in prison, with four years suspended. Smith's direct appeal and other postconviction motions failed. Smith did not file a state habeas petition.

## II.     Claims

On February 8, 2017, Smith filed the current petition, alleging:

1. Smith's probation officer, Catherine Wingfield, falsely stated in the presentence report that she had conducted a COMPAS[1] evaluation which placed Smith in a "high

---

[1] COMPAS stands for: Correctional Offender Management Profiling for Alternative Sanctions.

1

risk" category for future substance abuse and he did not find out this information until he was sentenced;

2. Commonwealth's Attorney Michael Doucette committed misconduct by forwarding the information regarding Officer Wingfield to defense counsel, rather than the court;

3. Assistant Commonwealth's Attorney Rebecca Wetzel was aware that the confidential information (Elizabeth Carey) had been videotaped and confronted about inhaling, licking, and touching cocaine purchased during a controlled buy that occurred on March 26, 2011, and the prosecutor used this tainted evidence against Smith.

Smith seeks the vacation of his conviction, a new trial, and/or an evidentiary hearing.

### III. Time-Bar

Under the Anti-terrorism Effective Death Penalty Act (AEDPA), a one-year period of limitation for federal habeas corpus runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). A petitioner can "toll" the federal habeas statute of limitation in two ways: statutory tolling and equitable tolling. Section 2244(d)(2) tolls the federal limitation period during the time in which "a properly filed application for State post-conviction or other collateral review . . . is pending." Equitable tolling occurs only if a petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544, U.S. 408, 418 (2005)).

## IV. Actual Innocence

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) severely restricts federal habeas relief afforded to state prisoners: "Generally, a federal court may not consider claims that a petitioner failed to raise at the time and in the manner required under state law." Teleguz v. Zook, 806 F.3d 803, 807 (4th Cir. 2015) (citation omitted). "[An] exception is made for cases in which a compelling showing of actual innocence enables a federal court to consider the merits of a petitioner's otherwise defaulted claims." Id.; see also Schlup v. Delo, 513 U.S. 298, (1995) (seminal actual innocence case that excused procedural default); McQuiggin v. Perkins, 569 U.S. 383 (2013) (actual innocence excuses time-bar). For a petitioner to claim actual innocence, "[new] evidence must establish sufficient doubt about [a petitioner's] guilt to justify the conclusion that his [incarceration] would be a miscarriage of justice unless his conviction was the product of a fair trial." Schlup, 513 U.S. at 316. Actual innocence "does not by itself provide a basis for relief. Instead, [the petitioner's] claim for relief depends critically on the validity of his [procedurally defaulted or time-barred claim]." Schlup, 513 U.S. at 315 (citing Herrera v. Collins, 506 U.S. 390, 403 (1993)).

"[H]abeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." Id. at 322. To state such a claim, the petitioner must satisfy a "rigorous" burden by "support[ing] his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Id. at 324. Further, "[h]aving been convicted . . . [petitioner] no longer has the benefit of the presumption of innocence. To the

3

contrary, [petitioner] comes before the habeas court with a strong—and in the vast majority of the cases conclusive—presumption of guilt." Id. at 326 n.42.

The district court must examine all evidence and make a holistic threshold determination about the petitioner's claim of innocence separate from its inquiry into the fairness of his trial. Teleguz v. Pearson, 689 F.3d 322, 330 (4th Cir. 2012). The district court may consider: the nature of evidence, House v. Bell, 547 U.S. 518, 537 (2006), the timing of submissions, McQuiggin, 569 U.S. at 399, the credibility of witnesses, House, 547 U.S. at 537, 552, and the probative force of the newly supplemented record. House, 547 U.S. at 538; Sharpe v. Bell, 593 F.3d 372, 381 (4th Cir. 2010). After performing this analysis, the district court must determine whether "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 328.

In addition, the reviewing court has significant latitude to make credibility assessments in actual innocence cases. See, e.g., United States v. Connolly, 504 F.3d 206, 213-14 (1st Cir. 2007) (The appellant "place[d] most of his emphasis upon [a co-felon's] jailhouse recantation . . . however, [the co-felon's] testimony did not occur in a vacuum . . . much of his testimony received substantial circumstantial corroboration."). A district court may have greater difficulty determining the credibility of evidence on a "cold record," but the Fourth Circuit allows the district court to conclude that the evidence is inadequate or unreliable enough to dismiss the petition without an evidentiary hearing. See Teleguz, 689 F.3d at 331.

*A. Guilty Pleas*

Pleading guilty does not entirely preclude a petitioner from claiming actual innocence at habeas proceedings; however, guilty pleas and partial confessions "seriously undermine" the claim. See Clark v. Clarke, No. 7:14CV00042, 2017 WL 819500, at *4 (W.D. Va. Mar. 1,

4

2017); Chestang v. Sisto, 522 Fed. App'x 389, 390 (9th Cir. 2013) (holding that "the evidence . . . was overwhelming" based on the petitioner's confession and guilty plea); Buie v. McAdory, 341 F.3d 623, 626 (7th Cir. 2003) ("[I]t is hard to see how one who has confessed can assert actual innocence."). In United States v. Broce, the Supreme Court of the United States held that by pleading guilty, "the accused is not simply stating that [the accused] did the discrete acts described in the indictment; [the accused] is admitting guilt of a substantive crime." 488 U.S. 563, 570 (1989). The Fourth Circuit has even instructed district courts to generally dismiss habeas petitions that contradict the plea colloquy. See States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

Additionally, guilty pleas give rise to several issues under Schlup: there is no factfinder (judge or jury) finding, the record is normally abbreviated, the state did not "present" evidence in the typical fashion to establish guilt beyond a reasonable doubt, and the petitioner has confirmed his guilt in a plea colloquy. See Bousley v. United States, 523 U.S. 614, 631-32 (1998) (Scalia, J., dissenting) ("[H]ow is the court to determine 'actual innocence' upon our remand . . . where conviction was based upon an admission of guilt?" Justice Scalia continued: "Presumably the defendant will introduce evidence [that he did not commit the crime] . . . and the Government . . . will have to find and produce witnesses saying that he did [commit the crime]. This seems to me not to remedy a miscarriage of justice, but to produce one."); Smith v. Baldwin, 510 F.3d 1127, 1140 n.9 (9th Cir. 2007) ("We are aware of a potential incongruity between the purpose of the actual innocence gateway announced in Schlup and its application to

5

cases involving guilty (or no contest) pleas."); Ruiz v. Gonzalez, 2009 WL 3233558, 2009 U.S. Dist. LEXIS 96668, at *8 n.5 (C.D. Cal. Oct. 2, 2009) (holding that the habeas court "must consider petitioner's guilty plea in determining whether petitioner can meet the Schlup standard").

*B. Actual Innocence Gateway*

Importantly, the seminal "actual innocence" cases relied on compelling evidence of actual innocence. See Bousley, 523 U.S. at 623 (holding that "'actual innocence' means factual innocence, not mere legal insufficiency."). In Schlup, a prison surveillance video showed the petitioner in the dining hall sixty-five seconds before guards responded to the murder he was charged with. The petitioner included affidavits that (1) professed Schlup's innocence, (2) identified another inmate as the assailant, (3) stated that the petitioner could not have traveled from the dining hall to the murder scene in the known elapsed time, and (4) revealed that the petitioner had been unhurried, certainly not as if he was rushing away from a murder scene. Schlup, 513 U.S. at 335-40. In House, the petitioner presented testimony that the victim's husband had admitted to several people that he had murdered his wife, and also called into question the prosecution's central forensic proof. 547 U.S. at 554 (The Court held that "the issue [was] close.").

## V. Discussion

Smith's petition is time-barred. Here, the circuit court's final judgment was entered in 2011, and Smith's direct review process ended when the Supreme Court of Virginia rejected his petition for appeal on July 16, 2012. Smith never filed a state habeas petition, and his other filings[2] did not toll the statute of limitations. Thus, Smith's federal habeas limitations period

---

[2] In 2012, Smith filed a motion for resentencing based on Wingfield's misrepresentations in the presentence report. Starting on November 7, 2013, Smith filed a series of motions to vacate void judgment in the Lynchburg

6

expired in 2013. At the threshold, Smith does not allege that he is entitled to equitable tolling. Instead, Smith contends that his claims are entitled to merits review because he is actually innocent. His argument fails for several reasons.[3]

First, his claim of actual innocence is seriously undermined by his guilty plea, and he has not demonstrated that his plea was involuntary or coerced. Second, Claims A and B do not implicate his conviction; they assert that Smith's rights were violated during the sentencing phase. The underlying claim of an actual innocence argument must necessarily attack the underlying conviction. See, e.g., McQuiggin, 569 U.S. at 394-95 ("The miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'") (quoting Schlup, 513 U.S. at 329); Capelton v. Warden of FCI-Estill, No. , 2014 WL 12634795, at *3 (D.S.C. Nov. 18, 2014) ("Petitioner's actual innocence argument fails because an actual innocence argument is only proper under § 2241 with regard to the underlying conviction, not the sentence."); Baker v. Clarke, No. 2:13CV324, 2013 WL 6448915, at *3 (E.D. Va. Dec. 9, 2013) (dismissing actual innocence argument when petitioner's habeas claims attacked the sentence imposed, not the conviction).

Further, the facts underlying Claims A and B are neither "new" nor "compelling," because Smith has been aware of the facts underlying his first two claims since 2012, and the

---

City Circuit Court. The trial court dismissed the first motion on November 14, 2013, and the latest on September 17, 2015. Smith appealed the latest denial, but the Supreme Court of Virginia dismissed the appeal on May 20, 2016, and his petition for rehearing on October 6, 2016. In each denial, the trial court dismissed Smith's motions as untimely. See Va. Sup. Ct. R. 1:1 (limiting trial court's jurisdiction in granting a motion to vacate to twenty-one days from the entry of final judgment); 28 U.S.C. § 2244(d)(2) (post-conviction or other collateral review must be properly filed).

[3] Smith does not clearly or coherently state a fundamental miscarriage of justice argument. He cites Schlup and lists arguments without indicating which claim(s) establish his actual innocence. Therefore, I will analyze each of his claims as an actual innocence argument. See Herrera, 506 U.S. at 404-05 (internal citation and quotation marks omitted) ("The fundamental miscarriage of justice exception is available only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence. We have never held that it extends to freestanding claims of actual innocence.").

7

sentencing court already directly addressed and denied his current arguments. First, in the motion for resentencing, counsel acknowledged that the Commonwealth's Attorney informed counsel regarding the inaccurate presentence report by letter dated June 17, 2012. Mot. for Resentencing 1, ECF No. 12-5. Second, the trial court directly addressed Smith's contentions, holding that his sentence "was not influenced by the bogus report of a COMPAS evaluation contained in the presentence report," but "was based upon the facts underlying [] Smith's conviction, his lengthy criminal record . . . and consideration of the sentencing guidelines." Letter Op. 1, ECF No. 12-6.

As for Claim C, Smith knew of the facts underlying the claim at the time he pleaded guilty, and his legal insufficiency argument is not enough to demonstrate a fundamental miscarriage of justice. First, the evidence is not "new." The record shows that the prosecutor disclosed the potentially exculpatory evidence to defense counsel in a letter dated June 7, 2011. Letter from Rebecca L. Wetzel, Assistant Commonwealth's Att'y, to Tara Wyant, Fed. Pub. Def. at 1 (June 7, 2011).[4] Second, the evidence merely impeaches the Commonwealth's witness; it does not establish factual innocence. See Calderon v. Thompson, 523 U.S. 538, 560-61 (1998) (impeachment evidence "is a step removed from evidence pertaining to the crime itself"); Bousley, 523 U.S. at 623 (actual innocence requires "factual innocence," not "mere legal insufficiency").

Therefore, Smith fails to demonstrate a fundamental miscarriage of justice that would entitle his petition to federal habeas review. Accordingly, I grant the motion to dismiss as to all of his claims.

---

[4] Specifically, the Commonwealth's Attorney informed counsel that the informant was paid $40 per controlled buy and $75 for truthful testimony at trial, she had a misdemeanor charge of prostitution nolle prosequied for her cooperation with the Commonwealth, and that an incident occurred where she licked cocaine off her fingers and also appeared to snort some cocaine during a controlled purchase. Id. The informant's excuse was that she was "smelled it" to make sure it was real. Id. at 2.

## VI.

For the foregoing reasons, I grant Respondent's motion to dismiss and dismiss the petition for a writ of habeas corpus. Based upon my finding that Petitioner has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

ENTER: This 26th day of June, 2018.

_____
Senior United States District Judge